# Chicago & Alton Railway Company v. City of Carlinville.

1. CITIES AND VILLAGES—*Unreasonable Ordinances.*—The general rule is, that where the legislature, in terms, confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the constitution, an ordinance passed pursuant thereto can not be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature. What the legislature distinctly says may be done, can not be set aside by the courts because they may deem it unreasonable or against sound policy.

2. SAME—*Where Mode of Exercise of Power to Legislate Is Not Prescribed.*—Where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid.

3. ORDINANCES — *How Unreasonableness Is To Be Determined.*— Whether a particular ordinance is unreasonable and therefore void, is a question to be determined by all the circumstances of the city, the objects sought to be attained, and the necessity which exists for the ordinance.

4. SAME—*Burden of Proof.*—The presumption is always in favor of a statute or of an ordinance passed in pursuance of competent statutory authority, and the burden of showing that a statute or ordinance is invalid, is upon the one asserting it.

**Prosecution Under City Ordinance.**—Appeal from the Circuit Court of Macoupin County; the Hon. ROBERT B. SHIRLEY, Judge presiding. Heard in this court at the November term, 1901. Affirmed. Opinion filed June 20, 1902.

PATTON, HAMILTON & PATTON, attorneys for appellant; WILLIAM BROWN, of counsel.

WILLIAM H. STEWARD, city attorney, and A. J. DUGGAN, attorneys for appellee.

Where the legislature, in terms, confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the constitution, an ordinance passed pursuant thereto can not be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental powers of the corporation, or of a grant of power general in its nature.   In other words, what the legislature says may be done, can not be set aside by the courts because they may deem it unreasonable or against sound policy.   City of Lake View v. Tate, 130 Ill. 247; Mason et al. v. Shawneetown, 77 Ill. 533; Hayes v. Railroad Co., 111 U. S. 228; Taylor v. Carondalet, 22 Mo. 105; Dillon, Mun. Corp. (4th Ed.), Sec. 994, 995; North Chicago City Ry. Co. v. Lake View, 105 Ill. 207; Tudor v. Chicago & South Side Rapid Transit Co., 154 Ill. 129.

The presumption is always in favor of the validity of a statute ordinance passed in pursuance of competent legal authority.   The burden of showing the validity of a statute or ordinance is upon him who asserts it, and the intendments will all be taken against him.   Harmon v. Chicago, 140 Ill. 374; The People v. Cregier, 138 Ill. 401.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

This was a prosecution by the City of Carlinville against

the Chicago & Alton Railway Company to enforce the payment of a fine for the alleged violation, by the company, of an ordinance of the city imposing a penalty for running within the limits of the city, any passenger train or car at a greater rate of speed than ten miles per hour, or any freight train or car at a greater rate of speed than six miles an hour.

The case was commenced before the police magistrate of the City of Carlinville, and after being tried by him, was taken by appeal to the Circuit Court, where, by consent of parties, it was tried by the court without a jury, and resulted in a finding and judgment against the company of a fine of $5, and for costs. The company excepted to the finding and judgment, and brings the case to this court by appeal. The error assigned and urged for a reversal is that the ordinance is void on account of being unreasonable, a restriction upon interstate commerce carried on between the State of Illinois and Missouri, and an unnecessary hinderance to the speedy carrying of the United States mail.

It is conceded that a fast passenger train of the company, known as the " Alton Limited," ran through the limits of the city at a rate of speed in excess of ten miles an hour, and the evidence shows that it ran at the rate of about fifty-five or sixty miles per hour.

The City of Carlinville is about midway between the City of Springfield and the City of East St. Louis, and is located on the main line of the Chicago & Alton Railway. It is the county seat and commercial center of Macoupin county, and has a population of 3,600 people, with the usual residences, stores, shops, and such industrial plants as are common to cities of its size. It also has a coal shaft situated directly on this railway that supplies the city and country around it with coal by means of wagons. The railway tracks run from the northeast toward the southwest for a distance of one and one-eighth miles through the westerly part of the corporate limits of the city, and most of the people live and do business on the east side of the railroad.

The railroad crosses at grade four public thoroughfares

within the city limits, two of which are in constant use by a great many people. A coal shaft, a grain elevator and a pickle factory are located as near to the tracks as will permit trains to pass, and to a great extent, obstruct the view of persons crossing the railroad on these thoroughfares.

The "Alton Limited" is a fast, luxuriously equipped train, put on for the accommodation largely of through travel between Chicago and St. Louis, and carries the United States mail. It is scheduled to run between those cities in about seven and one-half hours, and stops only at the larger cities along the route, and when necessary to take coal or water, and to receive orders.

The distance from Chicago to St. Louis by the Alton Railway, is 280 miles, sixty-five of which is within the limits of incorporated cities, towns and villages.

The Illinois Central and the Wabash Railroads also run trains between Chicago and St. Louis, and are competitors of the Alton Railway for business between those cities. The distance between the two cities is about the same over each of the three roads, but the Central and the Wabash each have a less number of miles of their track within the limits of incorporated cities, towns and villages, than the Alton has.

The City of Carlinville is organized under the general incorporation law of the State, which authorizes the city council of any city organized thereunder, " to regulate the speed * * * of cars and locomotives within the limits of the corporation." The statute in relation to fencing and operating railroads provides that no such ordinance shall limit the rate of speed in case of passenger trains, to less than ten miles an hour, nor in any other case, to less than six miles per hour. And the ordinance of the city in force at the time in question is as follows:

" Sec. 261. No railroad company or conductor, engineer, or other employe of such company managing or controlling any locomotive engine, car or train upon any railroad track, shall run or permit to be run, within the limits of said city, any passenger train or car at a greater rate of speed than ten miles per hour, nor any freight train or car

at a greater rate of speed than six miles per hour, under a penalty in either case of not exceeding twenty-five dollars for each offense."

By the general incorporation law, express power is conferred upon the city council of Carlinville to regulate by ordinance, the speed of trains while passing through its city limits. And the statute regulating the fencing and operating of railroads provides that such ordinance must not limit the rate of speed in case of passenger trains, to less than ten miles an hour. The ordinance is therefore within the power conferred, and does not require trains to run at a less rate of speed than the statute prohibits.

The general rule is, that " where the legislature, in terms, confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the constitution, an ordinance passed pursuant thereto can not be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the legislature distinctly says may be done, can not be set aside by the courts because they may deem it unreasonable or against sound policy. But where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid." 1 Dillon on Corporations, Sec. 328; City of Lake View v. Tate, 130 Ill. 247.

In Toledo, Peoria and Warsaw Railway Co. v. Deacon, 63 Ill. 91, where the validity of an ordinance of the town of Cuba, regulating the speed of railroad trains within its corporate limits to five miles an hour, was involved, Justice Thornton, speaking for the court, said :

" Though the legislature has granted franchises to railway corporations, and authorized them to procure the right of way, and operate their trains by the power of steam, yet they have not unlimited discretion in the regulation of the speed of trains. They can not act recklessly and in disre-

gard of the safety and rights of others. The state has reserved to itself the power to enact all police laws neces-sary and proper to secure and protect the life and property of the citizen. Prominent among the rights reserved, and which must inhere in the state, is the power to regulate the approaches to and the crossing of public highways, and the passage through cities and villages, where life and property are constantly in imminent danger by the rapid and fearful speed of railway trains. The exercise of their franchise by corporations must yield to the public exigen-cies and the safety of the community."

And what he there said, is repeated by the court in Chi-cago & Northwestern Ry. Co. v. City of Chicago, 140 Ill. 309.

In City of Lake View v. Tate, 130 Ill. 247, it is held that where the subject-matter and provisions of a municipal ordi-nance are left to the discretion of the city council, such dis-cretion is not absolute, but is subject to the limitation that the ordinance must be reasonable. And that whether a par-ticular ordinance is unreasonable and therefore void, is a question to be determined by all the circumstances of the city, the objects sought to be attained, and the necessity which exists for the ordinance.

And in Wice v. Chicago & Northwestern Ry. Co., 193 Ill. 351, it is held that an ordinance must be reasonable, or it will be held void, and that the question of the reason-ableness is one for the decision of the courts; that in deter-mining that question, the courts will have regard to all the existing circumstances or contemporaneous conditions, the object sought to be attained and the necessity, or want of necessity, for its adoption.

In determining this question, it must be remembered that the presumption is always in favor of a statute or of an ordi-nance passed in pursuance of competent statutory author-ity, and the burden of showing that a statute or ordi-nance is invalid, is upon the one asserting it; therefore, unless the evidence in this case establishes facts from which it appears that the ordinance in question imposes an unrea-sonable restriction upon the rate of speed of trains while passing through the limits of the city, it must be held to

be valid in that respect. The People ex rel. v. Cregier, 138 Ill. 401; and Harmon v. City of Chicago, 140 Ill. 374.

Considering the population of the City of Carlinville, and of the territory tributory thereto, and the constancy with which numbers of people must cross the railroad tracks at grade within the limits of the city, we can not say that the provisions of the ordinance are an unreasonable restriction upon the rights of the railroad company in the respect claimed, but a wholesome enactment contributing to the safety of those traveling on its trains as well as those using the public crossing.

Statutes and regulations requiring "trains to stop at railroad crossings and drawbridges, and to reduce the speed of trains when running through crowded thoroughfares, requiring its tracks to be fenced, and a bell and whistle to be attached to each engine, signal lights to be carried at night, and tariff and time tables to be posted at proper places, and other similar requirements contributing to the safety, comfort and convenience of their patrons," are upheld. Cleveland, Cincinnati, Chicago and St. Louis Ry. Co. v. People of the State of Illinois ex rel. Thos. M. Jett, 44 U. S. (L. Ed.) 868.

The finding and judgment of the Circuit Court in this case are in accordance with the evidence and the law applicable thereto, and the latter will be affirmed.